**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JACOB WHEELER, | ) | Case No. _____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| COHBAR, INC., DAVID GREENWOOD, ALBION J. FITZGERALD, CAROL NAST, MISHA PETKEVICH, JOSEPH J. SARRET, STEPHANIE TOZZO, and JOANNE YUN, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against CohBar, Inc. ("CohBar" or the "Company") and the members of CohBar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge CohBar with Morphogenesis, Inc. ("Morphogenesis") (the "Proposed Transaction").

2. On May 22, 2023, CohBar, CohBar's wholly owned subsidiary Chimera MergeCo, Inc. and Morphogenesis entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, CohBar and Morphogenesis will combine, with

(i) Morphogenesis common stock converted into the right to receive a number of shares of CohBar common stock equal to the Exchange Ratio (as defined in the Merger Agreement); and (ii) CohBar's stockholders receiving a dividend equal to approximately 3.3 shares of CohBar common stock and a contingent value right ("CVR") entitling the holder thereof to receive certain cash payments from the net proceeds, if any, related to the disposition of CohBar's legacy assets pursuant to any disposition agreement entered into within three years of the closing of the merger.

3. Concurrently with the execution of the Merger Agreement, CohBar entered into a stock purchase agreement with an affiliate of an existing investor in Morphogenesis (the "Investor") for a $15 million private placement that is expected to close concurrently with the Proposed Transaction. Upon closing of the Proposed Transaction, CohBar's current stockholders will own approximately 15% of the combined company, Morphogenesis' current stockholders will own approximately 77% of the combined company, and the Investor will own approximately 9% of the combined company.

4. On September 12, 2023, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that CohBar stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Morphogenesis and the pro forma company, as well as any financial projections or liquidation analysis of CohBar; and (ii) the background of the Proposed Transaction.

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as CohBar stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

6. The special meeting for CohBar stockholders to vote on the Proposed Transaction is currently scheduled for October 4, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and CohBar's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of CohBar common stock.

11. Defendant CohBar is a Delaware corporation, with its principal executive offices located at 1455 Adams Drive, Suite 1308, Menlo Park, California 94025. CohBar's shares trade on the Nasdaq Capital Market under the ticker symbol "CWBR."

12. Defendant David Greenwood has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Albion J. Fitzgerald ("Fitzgerald") has been a director of the Company at all relevant times.

14. Defendant Carol Nast has been a director of the Company at all relevant times.

15. Defendant Misha Petkevich has been a director of the Company at all relevant times.

16. Defendant Joseph J. Sarret has been Chief Executive Officer and a director of the Company at all relevant times.

17. Defendant Stephanie Tozzo has been a director of the Company at all relevant times.

18. Defendant Joanne Yun has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 12-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. CohBar is a clinical stage biotechnology company that historically developed mitochondria and peptides-based therapeutics for the treatment of chronic and age-related diseases. In December 2022, the Company suspended its Investigational New Drug-enabling work on pre-clinical candidate CB5138-3, which CohBar had been developing as a potential treatment of idiopathic pulmonary fibrosis and other fibrotic diseases.

**The Proposed Transaction**

21.     On May 23, 2023, CohBar announced that it had entered into the Proposed Transaction, stating, in relevant part:

> MENLO PARK, Calif. and TAMPA, Fla. , May 23, 2023 (GLOBE NEWSWIRE) -- CohBar, Inc. (NASDAQ: CWBR) ("CohBar" or the "company") and Morphogenesis, Inc. ("Morphogenesis"), a privately-held Phase 2/3 clinical-stage biotechnology company developing novel personalized cancer vaccines and tumor microenvironment modulators to overcome resistance to current immunotherapies, today announced that they have entered into a definitive agreement for an all-stock transaction forming a company combining expertise and resources to advance a late-stage oncology pipeline. The combined company will focus on advancing Morphogenesis' two technologies that seek to overcome the major obstacles that limit the effectiveness of current immunotherapies in treating cancer. The combined company is expected to operate under the name "TuHURA Biosciences, Inc." and to trade on The Nasdaq Capital Market ("Nasdaq"). The transaction is expected to close in the third quarter of 2023.
>
> "Following a thorough review and evaluation, we believe merging with Morphogenesis and leveraging their late-stage pipeline of novel immuno-oncology technologies represents the best path forward for our stockholders and has the potential to deliver near and long-term value," stated Dr. Joseph Sarret, CEO of CohBar. "Our board and management team believe that the combined company will be well-positioned to develop powerful new therapies with the potential to overcome resistance to current immunotherapies, an area of significant unmet need."
>
> Morphogenesis' technologies, which can be used to target large unmet medical needs across a variety of cancers, include:
>
> - **Immune Fx (IFx) Personalized Cancer Vaccines**: IFx is designed to prime and activate an innate immune response against patient-specific tumor antigens, overcoming primary resistance to checkpoint inhibitors. Morphogenesis is currently preparing for a single Phase 2/3 registration trial of its lead personalized cancer vaccine, IFx-Hu2.0, as an adjunct to Keytruda® (pembrolizumab) in first line treatment for advanced Merkel Cell Carcinoma (MCC). This study is expected to be conducted under a Special Protocol Assessment (SPA) agreement with the FDA and to commence in early 2024. Additionally, Morphogenesis is advancing IFx-Hu3.0, its mRNA vaccine, toward IND-enabling studies in 2024 for the treatment of aggressive diffuse large B-cell lymphoma (DLBCLs).
>
> - **Tumor Microenvironment (TME) Modulators**: TME Modulators are designed to address one of the primary causes of acquired resistance to

immunotherapies, including checkpoint inhibitors or cellular therapies like CAR-T. Leveraging its new class of novel bi-functional antibody drug conjugates (ADCs), Morphogenesis is targeting a recently identified delta receptor on myeloid derived suppressor cells (MDSCs). MDSCs comprise a major component of cells in the tumor microenvironment and are responsible for suppressing the immune system's attack against the tumor. Morphogenesis is constructing several MDSC targeted, bi-functional ADCs for *in vitro* and *in vivo* characterization, targeting lead selection by the end of 2024.

"I'm extremely pleased to announce this proposed merger with CohBar, which comes at a pivotal time for Morphogenesis," said Dr. James Bianco, Chief Executive Officer of Morphogenesis. "We are gearing up to initiate our Phase 2/3 registration study for IFx-Hu2.0 early next year. Our technology platforms have the potential to significantly increase the number of cancer patients that respond to immunotherapies, such as checkpoint inhibitors. This transaction serves as a significant next step in the advancement of our important mission."

**About the Proposed Transaction, Management & Organization**

Under the terms of the merger agreement, subject to stockholder approval, each holder of CohBar common stock as of immediately prior to the closing of the transaction will be issued a dividend equal to approximately 3.30 shares of CohBar common stock on or about the effective date of the merger. On a pro forma basis taking into account the concurrent financing described below and the issuance of the stock dividend, pre-merger CohBar equityholders are expected to collectively own approximately 15% and pre-merger Morphogenesis equityholders are expected to collectively own approximately 77%, respectively, of the common stock of CohBar on a pro forma basis (assuming the exercise of all in-the-money warrants and options then outstanding).

Upon execution of the merger agreement, CohBar also entered into a stock purchase agreement with an affiliate of an existing investor in Morphogenesis for a $15 million private placement that is expected to close concurrently with the closing of the proposed merger. The proceeds from the private placement will be used to fund the advancement of the combined company's immunotherapy-focused development pipeline, with an anticipated cash runway through 2024. Immediately following the closing of the merger and the closing of the private placement, the shares issued in the private placement are anticipated to represent approximately 9% of the common stock of CohBar on a pro forma basis (assuming the exercise of all in-the-money warrants and options then outstanding).

Additionally, pre-merger CohBar stockholders and certain warrant holders of record will receive a contingent value right (CVR). Holders of the CVR will be entitled to receive certain payments from proceeds received by CohBar, if any, related to the disposition of CohBar's legacy mitochondrial assets for a period of three years following the closing of the proposed merger.

6

The merger agreement has been approved by the boards of directors of both companies and is subject to stockholder approval of both companies and other customary closing conditions. The proposed merger is expected to close in the third quarter of 2023.

Following the merger, the combined company will be headquartered in Tampa, Florida, and the executive officers are expected to be James Bianco, MD as Chief Executive Officer, and Dan Dearborn, CPA as Chief Financial Officer. The merger agreement provides that the board of directors of the combined company will be composed of seven members, with five members initially designated by Morphogenesis and two members initially designated by CohBar.

Ladenburg Thalmann & Co., Inc. is acting as the exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal counsel to CohBar. H.C. Wainwright & Co. is acting as the exclusive financial advisor and Foley & Lardner LLP is acting as legal counsel to Morphogenesis.

**The Materially Incomplete and Misleading Prospectus**

22. On September 12, 2023, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that CohBar stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Morphogenesis and the pro forma company, as well as any financial projections or liquidation analysis of CohBar; and (ii) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Morphogenesis, the Pro Forma Company and CohBar*

23. The Prospectus fails to disclose material information concerning the financial projections for Morphogenesis and the pro forma company, as well as any financial projections or liquidation analysis of CohBar

24. Critically, according to the Prospectus, in connection with its fairness opinion, Ladenburg Thalmann & Co. ("Ladenburg"):

> [r]eviewed and analyzed certain internal financial analyses including the cash burn model over the next year, projections as to cost and expenses and whether concurrent capital raised would sufficiently cover select programs, reports, preliminary internal market opportunity assumptions and other information concerning Morphogenesis prepared by Morphogenesis, which were further revised by CohBar and utilized per the instruction of the CohBar management team.

Prospectus at 126. Yet, the Prospectus omits these internal financial analyses and projections prepared by Morphogenesis and revised and utilized by CohBar management. Critically, these internal financial analyses were "considered by the CohBar Board and management team in determining the viability of the combined company to successfully operate in the public markets[.]" *Id*.

25. Similarly, in connection with its fairness opinion, Ladenburg "[r]eviewed certain pro forma financial effects of the [Proposed Transaction.]" *Id.* The Prospectus fails, however, to disclose the pro forma effects of the Proposed Transaction reviewed by Ladenburg.

26. The Prospectus also fails to disclose any financial projections for CohBar or a summary of any liquidation analyses performed by Company management or Ladenburg in connection with the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

27. The Prospectus fails to disclose material information concerning the background of the Proposed Transaction.

28. The Prospectus also fails to fully disclose the details of defendant Fitzgerald's reasons for not voting in favor of the Proposed Transaction. Specifically, the Prospectus fails to disclose the details of (i) defendant Fitzgerald's objections or concerns related to the Proposed Transaction throughout the strategic process, including but not limited to his objections to the

8

proposed structure of a simultaneous sign-and-close reverse merger transaction at Board meetings prior to May 3, 2023; and (ii) any concerns defendant Fitzgerald raised specific to Morphogenesis.

29.     In addition, according to the Prospectus, in connection with the initial outreach process, "CohBar signed a non-disclosure agreement (which contained customary standstill provisions) with 41 companies[.]" *Id.* at 108. The Prospectus fails, however, to disclose the details of the standstill agreements the Company entered into with the prospective bidders, including whether any of the standstill provisions are "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

30.     Moreover, the Prospectus sets forth that during the November 8 and November 15, 2022 Board meetings, Morphogenesis had not been identified as one of the top candidates because Company management believed other candidates "were better aligned with the criteria identified at the November 8 meeting including (i) stage of development of the most advanced product or product candidate, (ii) management, board and investor syndicate, (iii) ability to conduct a concurrent financing and (iv) near term inflection points." *Id.* at 108. Thereafter, the Company entered into a non-binding term sheet with a party referred to as "Company A," which was later terminated. Then, at a February 7, 2023 Board meeting, CohBar management provided "an update with respect to Morphogenesis' status and certain improvements with respect to the criteria identified at the November 8 meeting" and recommended that the Board authorize Company management to engage in further negotiations with Morphogenesis and two other parties. *Id.* at 110. Yet, the Prospectus fails to disclose the details of the "certain improvements [related to Morphogenesis] with respect to the criteria identified at the November 8 meeting" discussed at the February 7, 2023 Board meeting.

31. In sum, the omission of the above-referenced information renders statements in the "Opinion of CohBar's Financial Advisor," and "Background of the Merger" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of CohBar will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CohBar**

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. CohBar is liable as the issuer of these statements.

34. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

35. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the

Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

37. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of CohBar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CohBar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

44. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CohBar, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 22, 2023    LONG LAW, LLC

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*

13